```
            UNITED STATES DISTRICT COURT
                DISTRICT OF MINNESOTA
             Civil No. 09-3032(DSD/JJK)
```

Molly T. Vang,

      Plaintiff,

v.                                          **ORDER**

Dental Delivery Systems of
Brooklyn Park P.A., doing business
as The Smile Center,

      Defendant.

> Daniel E. Warner, Esq., Warner Law Office, 5774 Blackshire Path, Inver Grove Heights, MN 55076, counsel for plaintiff.
>
> Sarah M. Fleegel, Esq., Thomas E. Marshall, Esq. and Jackson Lewis LLP, 225 South Sixth Street, Suite 3850, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion for summary judgment by defendant Dental Delivery Systems of Brooklyn Park P.A. d/b/a The Smile Center (The Smile Center). Based on a review of the file, record and proceedings herein, and for the reasons stated, the court grants the motion.

**BACKGROUND**

This employment dispute arises out of The Smile Center's termination of plaintiff Molly T. Vang on June 29, 2009. Vang, who is Hmong, began work as a dental assistant at The Smile Center on June 4, 2008. Vang Dep. 54. In July 2008, she was promoted to lead dental assistant for the evening shift. Id. at 82-85. During

this shift, Vang worked with Dr. Basem Youssef. Id. at 29. Vang claims that Youssef spoke to her rudely, yelled at her, joked about his Egyptian nationality, once played with her hair, and twice referred to himself as a "Chinaman" as he pulled up the sides of his eyes. Id. at 96-97, 110-13, 213-14; Warner Aff. Ex. 11, at 000011-12. In March 2009, Vang stepped down from the lead position. Vang Dep. 122-24.

On April 15, 2009, Vang posted a note on the "appreciation board" thanking all of the doctors except Youssef for "being patient and always nice." Vang Dep. Ex. 15. On April 16, 2009, David Evensen, the office manager, removed the note and told Vang that excluding one doctor was a "negative" use of the appreciation board. Evensen Dep. 104. Vang began to cry, and Evensen permitted her to leave for the day. Id. at 106. Later that day, Vang called Human Resources Director Cheryl Goettig and complained that she "felt mentally abused" by Youssef's "constant yelling and shouting." Id. at 141. Goettig invited Vang to meet with her the following day. Id. During the meeting on April 17, 2009, Vang complained that Youssef "wants [her] to be at two places at one time" and that she was being "picked on." Id. at 144, Ex. 17. Vang also expressed concern that, "because of the economy," she would lose her job for complaining. Id. at 227. Goettig promised Vang that she would not be fired for complaining. Id. Goettig interviewed Youssef, and concluded that the facts did not support

2

a harassment claim. Goettig Dep. 85-88. Goettig granted Vang's request to no longer work with Youssef. Id. at 86.

Vang's May 29, 2009, performance review rated her as "excellent." Vang Dep. Ex. 12. However, The Smile Center claims that Vang became insubordinate, uncooperative and instigated conflict at the clinic. Evensen Dep. 128; Meggitt Dep. 40-45. In early June, Vang called her supervisor a liar in front of other dental assistants. Vang Dep. 186-87. On June 29, 2009, The Smile Center terminated Vang's employment.

Vang filed this action in Minnesota state court on October 6, 2009, claiming race and national origin discrimination, hostile work environment, reprisal, and unlawful termination, all in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and the Minnesota Human Rights Act (MHRA), and promissory estoppel and breach of contract. The Smile Center timely removed and moved for summary judgment. The court now considers the motion.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of

3

the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**I. MHRA and Title VII Claims**

In cases involving indirect evidence, such as here, the court applies the McDonnell Douglas burden-shifting framework to discrimination and reprisal claims.[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-05 (1973); Recio v. Creighton Univ., 521 F.3d 934, 938-39 (8th Cir. 2008) (reprisal). A plaintiff must first establish a prima facie case of discrimination.

---

[1] The court analyzes Title VII and MHRA discrimination and retaliation claims under the same framework. See Riser v. Target Corp., 458 F.3d 817, 820 & n.2 (8th Cir. 2006) (MHRA race discrimination claim); Thorn v. Amalgamated Transit Union, 305 F.3d 826, 830 (8th Cir. 2002) (MHRA reprisal claim).

4

See Humphries v. Pulaski Cnty. Special Sch. Dist., 580 F.3d 688, 692 (8th Cir. 2009). The defendant then must articulate a legitimate nondiscriminatory reason for its actions. See id. at 692-93. The burden then shifts back to the plaintiff to produce evidence demonstrating that the defendant's reason is pretext for unlawful discrimination. See id. at 693.

**A.  Hostile Work Environment**

To succeed on a hostile work environment claim based on racial discrimination, Vang must show that: (1) she belongs to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on race or national origin, (4) the harassment affected a term, condition, or privilege of employment, and (5) The Smile Center knew or should have known of the harassment and failed to take proper action. See Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 910 (8th Cir. 2006). In deciding whether a plaintiff has demonstrated that the harassment affected a term, condition or privilege of employment, the court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Woodland v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839, 843 (8th Cir. 2002) (citation omitted). To avoid imposing "a code of workplace civility," the threshold for actionable harm is

5

high.  Id.  The harassment must be so intimidating, offensive, or hostile that it "poisoned the work environment."  Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir. 1999) (citation omitted).

The Smile Center argues that Vang failed to show that the harassment was based on race and was sufficiently severe and pervasive to affect a term or condition of her employment.  The court agrees.  Vang complains that Youssef touched her hair, yelled at her, and was otherwise unprofessional, but does not claim that he did so because of her race or national origin.  To the contrary, the facts show that Youssef's conduct was universal, and not directed to dental assistants of a particular race or national origin.  See Meggitt Dep. 15; Lee Dep. 13.

Moreover, Youssef's alleged conduct of pulling up his eyes and saying "I'm a chinaman" does not rise to the level of severe and pervasive harassment required under the MHRA.  See Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1039 (8th Cir. 2005) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."); Elmahdi v. Marriott Hotel Servs., Inc., 339 F.3d 645, 653 (8th Cir. 2003) (calling African plaintiff "boy" and "black boy" over a period of years did not constitute hostile work environment).  Therefore, Vang fails to make a prima facie showing of a hostile work environment and summary judgment is warranted.

**B.   Retaliation**

To establish a prima facie case of retaliation, Vang must show that (1) she engaged in statutorily protected activity, (2) an adverse employment action was taken, and (3) there is a causal connection between the protected activity and the adverse employment action. Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 693 (8th Cir. 2001). Statutorily protected activities include opposing any employment practice that is unlawful under the MHRA. See Minn. Stat. § 363A.15. A plaintiff can show a causal connection between protected activity and an adverse action through circumstantial evidence such as timing between the two events, see Jackson v. Flint Ink N. Am. Corp., 370 F.3d 791, 798 (8th Cir. 2004), but more than a temporal connection is generally required to establish a genuine factual issue, see Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999).

The Smile Center argues that Vang's complaint was not protected conduct and that there is no causal connection between her complaint and termination. Vang argues that she need not show that the conduct complained of was unlawful, "as long as [she] had a reasonable belief that what was being opposed constituted discrimination under Title VII." Sisco v. J. S. Alberici Constr. Co., Inc., 655 F.2d 146, 150 (8th Cir. 1981) (citation omitted). However, "complaints do not constitute protected activity for purposes of a retaliation (or reprisal) claim unless they implicate

7

race or some other illegitimate criterion." Colenburg v. STARCON Int'l, Inc., 656 F. Supp. 2d 947, 957 (D. Minn 2009). Vang's complaints that she felt mentally abused and unfairly criticized do not indicate that she "opposed an *unlawful* employment practice prior to her termination." Hunt v. Neb. Pub. Power Dist., 282 F.3d 1021, 1028 (8th Cir. 2002) (employee's complaint about lack of pay increase did not oppose an unlawful employment practice because it was not attributed to employer's sex discrimination). As a result, the complaints do not constitute protected conduct.

Even if Vang could establish that her complaint constituted a protected activity, there is no evidence of a causal connection between the complaint and her termination. Over two months passed between Vang's April 17 meeting with Goettig and her termination on June 29. See Kipp v. Mo. Highway and Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) (interval of two months between complaint and termination "dilutes any inference of causation"). In addition, Vang's conduct of calling her supervisor a liar in front of co-workers was "intervening unprotected conduct [that] eroded any causal connection." Kiel, 169 F.3d at 1136. Therefore, summary judgment is warranted on Vang's retaliation claim.

**C. Unlawful Termination**

To establish a prima facie case of unlawful termination, Vang must show that (1) she is a member of a protected class, (2) she was meeting The Smile Center's legitimate job expectations, (3) she

8

suffered an adverse employment action, and (4) similarly situated employees outside her protected class were treated differently.[2] See Fields v. Shelter Mut. Ins. Co., 520 F.3d 859, 864 (8th Cir. 2008).

The Smile Center argues that Vang has not shown that similarly situated non-Hmong employees were treated differently. The court agrees. Vang fails to show that other employees "involved in or accused of the same or similar conduct ... [were] disciplined in different ways." Id. (citing Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 851 (8th Cir. 2005)(low threshold standard). Vang compares herself to two non-Hmong dental assistants who were given written warnings after having "a flipper" and "a night guard" made "without entering [the items] into the clinical notes." Warner Aff. Ex. 14. The conduct giving rise to the warnings, however, was "stealing dental services." Id. Vang was accused of insubordination, an uncooperative attitude and instigating conflict. See Evensen Dep. 128; Meggitt Dep. 40-45. General comparisons of dissimilar employee misconduct do not satisfy the "same or similar"

---

[2] The test to determine whether employees are similarly situated at the prima facie stage of the McDonnell Douglas analysis is unsettled in the Eighth Circuit. See Wimbley v. Cashion, 588 F.3d 959, 962 (8th Cir. 2009) (noting that one line of cases applies a "low threshold" standard while another applies a "rigorous" standard). In this case, Vang fails to meet either standard.

threshold.[3]  Rodgers, 417 F.3d at 852.  Therefore, Vang failed to meet her prima facie burden on the unlawful termination claim, and summary judgment is warranted.[4]

**II. State-Law Claims**

Vang next asserts state-law claims of breach of contract and promissory estoppel.[5]  The court exercises supplemental jurisdiction over Vang's state-law claims.  See 28 U.S.C. § 1367(a); McLain v. Andersen Corp., 567 F.3d 956, 965 (8th Cir. 2009) ("[P]ursuant to 28 U.S.C. § 1367, courts have the discretion to exercise supplemental jurisdiction over remaining state-law claims even after the district court has dismissed all claims over which it has original jurisdiction.") (citation and internal quotation marks omitted).  Because Vang's federal and state claims derive from the same facts, deciding both claims in one proceeding promotes judicial efficiency.  See OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 350 (8th Cir. 2007) (exercise of

---

[3] Vang also compared herself to three non-Hmong employees who were placed on Performance Improvement Plans, but failed to specify the conduct for which they were disciplined.  See Wimbley, 588 F.3d at 962.

[4] Even if Vang had met her prima facie burden, the claims fail at the pretext stage.  The Smile Center articulated Vang's insubordination and hostility as legitimate, nondiscriminatory reasons for the termination, and Vang failed to show that employees who were similarly situated "in all relevant aspects" were disciplined more leniently for conduct of "comparable seriousness." Rodgers, 417 F.3d at 853.

[5] Because Vang's common law claims fail on the merits, the court need not address The Smile Center's MHRA preemption argument.

supplemental jurisdiction appropriate when claims would ordinarily be expected to be tried in one proceeding).

### A. Breach of Contract

Under Minnesota law, "[a] claim of breach of contract requires proof of three elements: (1) formation of a contract, (2) performance of conditions precedent by the plaintiff, and (3) breach of the contract by the defendant." Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A., 756 N.W.2d 907, 918 (Minn. Ct. App. 2008) (citations omitted). "The formation of a contract requires communication of a specific and definite offer, acceptance and consideration." Id. (citation and internal quotation marks omitted). "The usual employer-employee relationship is terminable at the will of either." Cederstrand v. Lutheran Bhd., 117 N.W.2d 213, 221 (Minn. 1962).

Vang admits that her employment was originally at will, but claims that a contract was formed when Goettig promised that she would not be terminated for complaining. Under Minnesota law, whether statements such as Goettig's are sufficient to constitute an offer of a unilateral contract is a question of law. See Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 740 (Minn. 2000). On similar facts, the Minnesota Supreme Court held that general statements of employer policy do not change an at-will employment arrangement into an employment contract. See Cedarstrand, 117 N.W.2d at 221-22. Goettig's statement, in

11

response to Vang's concerns about the economy, was a general recitation of The Smile Center's anti-retaliation policy. As a result, no contract was formed. Moreover, even if such a contract was formed, there is no evidence of breach because Vang failed to show a connection between her complaint and her termination. Therefore, summary judgment is warranted on the breach of contract claim.

**B. Promissory Estoppel**

Promissory estoppel "is an equitable doctrine that implies a contract in law where none exists in fact." Martens, 616 N.W.2d at 746. To prove promissory estoppel, a plaintiff must show "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee and which does induce such action or forbearance." Grouse v. Grp. Health Plan, Inc., 306 N.W.2d 114, 116 (Minn. 1981). Such a promise "is binding if injustice can be avoided only by enforcement of the promise." Id.

Vang argues that she relied to her detriment on Goettig's promise that she would not be fired for complaining about Youssef. The argument fails, however, because Vang had already complained to Goettig about "Dr. Youssef's constant yelling" in a prior telephone conversation on April 16, 2009. Vang Dep. 141. Goettig's promise was made after Vang had already acted. Vang Dep. 227. The timing of Goettig's statement precludes a finding of reliance. Moreover,

12

even if Vang could show reliance on Goettig's promise, there is no evidence that she suffered any detriment as a result of her complaint. Therefore, summary judgment is warranted on the promissory estoppel claim.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that The Smile Center's motion for summary judgment [ECF No. 23] is granted. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 16, 2010

s/David S. Doty
David S. Doty, Judge
United States District Court
